ACCEPTED
04-13-00106-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/29/2015 2:08:28 PM
KEITH HOTTLE
CLERK

## No. 04-13-00106-CV

# IN THE

# FOURTH COURT OF APPEALS

# SAN ANTONIO

**BARRY BROOKS, *et al.*,**

*Appellants,*

**EXCELLENCE MORTGAGE, LTD., *et al.*,**

*Appellees.*

**On Appeal from the
224th District Court, Bexar County, Texas**

## SECOND MOTION FOR REHEARING OF APPELLANTS, BARRY BROOKS, ET AL.

Darby Riley
Texas Bar No. 16924400
Riley & Riley
Attorneys at Law
320 Lexington Avenue
San Antonio, Texas 78215-1913
(210) 225-7236 (telephone)
(210) 227-7907 (facsimile)
Email: darbyriley@rileylawfirm.com
ATTORNEY FOR APPELLANTS

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................. iii

APPENDIX LIST ...........................................................................iv

SUMMARY OF THE ARGUMENT..................................................... 2

ARGUMENT ................................................................................ 4

I.     **The Court should exercise its jurisdiction to make the rulings the trial court should have made on Appellants' Cross-Motion for Summary Judgment** ..................................................... 4

A.     *The Court properly found jurisdiction, but failed to exercise it.*............. 4

B.     *The Loan Officers' Cross-Motion and Excellence Mortgage, Ltd.'s response*............................................................................... 5

C.     *Since there are no material fact issues, this Court should grant summary judgment against the mortgage company parties' claims on their four causes of action against the loan officers* ...................... 7

II.     **The Court erred in granting summary judgment against the loan officers' claims of breach of contract** ......................................... 10

A.     *Standard of Review* ................................................................. 11

B.     *Standards for Resolving Omitted Terms in Contracts*....................... 12

C.     *The Court erred in supplying the missing term in the contract, since traditional summary judgment was not sought on that basis* ............. 14

D.     *Even if the Court properly decided the question of what constitutes reasonable compensation, its determination is in error as to such compensation after termination without cause.* ........................... 16

CONCLUSION AND PRAYER ........................................................ 21

CERTIFICATE OF COMPLIANCE .................................................... 23

CERTIFICATE OF SERVICE .......................................................... 24

# INDEX OF AUTHORITIES

**Cases**                                                                    **Page**

*Fujimoto v. Rio Grande Pickle Co.,*
    414 F.2d 648 (5th Cir. 1969)................................................................. 19

*Marsh USA, Inc. v. Cook,*
    354 S.W.3d 764 (Tex. 2011) ............................................................. 8

*McConnell v. Southside Independent School District,*
    858 S.W.2d 337 (Tex. 1993) ............................................................. 11

*Olander v. Compass Bank,*
    172 F.Supp.2d 846 (S.D.Tex. 2001) aff'd
    94 Fed.Appx. 651 (5th Cir. 2002) ..................................................... 8

*Oleksy v. Farmers Insurance Exchange,*
    410 S.W.3d 378 (Tex. App.—Houston [1st Dist.] 2013, pet.
    denied) ............................................................................................. 11

*Smithkline Beecham Corp. v. Doe,*
    903 S.W.2d 347 (Tex. 1995) ............................................................. 6

*Stiles v. Resolution Trust Corp.,*
    867 S.W.2d 24 (Tex. 1993) ............................................................... 11

**Rules**

Texas Rule of Appellate Procedure 9.4(i)(3)............................................. 23

# INDEX OF AUTHORITIES (continued)

**Other Authorities**

E. Allan Farnsworth, *Disputes over Omissions in Contracts*,
68 COLUM. L. REV. 860 (1968) ................................................. 12, 13, 14

RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981) ........................ 4, 12, 13

T. PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE,
PROCEDURE, AND REVIEW, § 3.05 (3d ed. 2013) ................................. 11

# APPENDIX LIST

**Tab**

Opinion on Motion for Rehearing ................................................................ 1

Excellence Mortgage, Ltd.'s Second Amended Petition ............................. 2

RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981) ................................. 3

No. 04-13-00106-CV

IN THE

FOURTH COURT OF APPEALS

SAN ANTONIO

BARRY BROOKS, *et al.,*
                                                    *Appellants,*

EXCELLENCE MORTGAGE, LTD., *et al.,*
                                                    *Appellees.*

On Appeal from the
224th District Court, Bexar County, Texas

---

## SECOND MOTION FOR REHEARING OF APPELLANTS, BARRY BROOKS, ET AL.

---

TO THE HONORABLE JUSTICES BARNARD AND ALVAREZ:

Appellants, BARRY BROOKS, HESTON C. KING, STEFEN DOUGLAS BROOKS, JOHANNA BARTON, and JESSE RODRIGUEZ BENAVIDES, file this Second Motion for Rehearing with respect to the Court's Opinion and Judgment of April 1, 2015, and would respectfully show the Court:

1

## SUMMARY OF THE ARGUMENT

I.    The Court erred in failing to grant the loan officers Cross-Motion for Summary Judgment.

Appellant loan officers respectfully request the Court to exercise the jurisdiction, which the Court correctly found it has, to grant their traditional Cross-Motion for Summary Judgment against Excellence Mortgage, Ltd. The loan officers seek summary judgment dismissing four causes of action asserted by Excellence Mortgage, Ltd.[1], all based on its contention that the loan officers unlawfully attempted to compete with Georgetown Mortgage, LLC for the pipeline loan customers after Excellence Mortgage, Ltd. had ceased operations. The Court's Opinion on Rehearing and Judgment of April 1, 2015 found that the loan officers were entitled to a trial on their antitrust and interference claims; it logically follows that, as a matter of law, the loan officers' attempts to solicit pipeline customers were not unlawful.

Excellence Mortgage, Ltd. has not put forth summary judgment evidence to counter the extensive evidence that the identities of the pipeline customers were not confidential information, as defined by the employment agreements, nor were they trade secrets. Therefore, the loan officers were within their rights to submit transfer letters to Excellence Mortgage, Ltd.

---

[1] The four causes of action are breach of fiduciary duty, breach of contract – confidential information, tortious interference with contract or prospective contractual relations, and misappropriation of trade secrets..

2

signed by the pipeline customers, requiring transfer of the loan files to the loan officers' new employer. And therefore, Excellence Mortgage, Ltd.'s claim against the loan officers for doing so are without merit.

II. The Court erred in granting summary judgment against the loan officers on their breach of contract claims.

The loan officers also request that the Court revise its Opinion on Motion for Rehearing with respect to the granting of Excellence Mortgage, Ltd.'s Motion for Summary Judgment on the loan officers' alternative claims for breach of contract. The Court properly found that the contract was silent on the issue of commissions due on pipeline loans where, as here, the loan officers were all suddenly terminated by Excellence Mortgage, Ltd.'s decision to cease operations; and that it was up to the courts to supply a reasonable compensation term.

However, the Court erred in determining what constitutes reasonable compensation under the circumstances, because Excellence Mortgage, Ltd. did not move for summary judgment on that basis, it was not before the trial court, and neither party developed evidence on that issue.

Excellence Mortgage, Ltd.'s theory on summary judgment was that the loan officers simply quit Excellence Mortgage, Ltd., so that under the express terms of the Personnel Production Compensation Plan, no further commissions were due. The court found that a fact issue existed on whether

3

the loan officers quit or were involuntarily terminated. Opinion, p. 9. Thus, summary judgment should have simply been denied, and the case remanded for determination of what constitutes reasonable compensation, based on the surrounding circumstances, usage of trade, or course of dealings.

Even if the Court decides that it should supply the missing term of the contract at this stage, the Court's determination that no commissions should be due beyond the termination date is not reasonable. The other terms of the contract, and the surrounding facts as shown in the record, indicate that the loan officers should be paid all or a portion of the commissions for loans closed by Excellence Mortgage, Ltd. after October 1, 2010, depending on the extent of work done on the file. Such a ruling would also be consistent with basic fairness, one of the standards to be used under RESTATEMENT (SECOND) OF CONTRACTS, § 204, cmt. e.

## ARGUMENT

**I.     The Court should exercise its jurisdiction to make the rulings the trial court should have made on Appellants' Cross-Motion for Summary Judgment.**

A.     *The Court properly found jurisdiction, but failed to exercise it.*

4

The Court properly found that it had jurisdiction over the Appellants' appeal of the denial of their Cross-Motion for Summary Judgment on Excellence Mortgage, Ltd.'s suit for breach of fiduciary duty, breach of contract–confidential information, tortious interference and misappropriation of trade secrets.   This Court stated:

> "We conclude that … the competing motions [for summary judgment] are based on the same issues.  Accordingly, we have jurisdiction over this appeal [of the trial court's denial of Appellants' Cross-Motion for Summary Judgment …]." Opinion on Motion for Rehearing, page 5.

However, the Court *failed to exercise its jurisdiction* to rule on Appellants' Traditional Cross-Motion for Summary Judgment.

B.     *The Loan Officers' Cross-Motion and Excellence Mortgage, Ltd.'s response*

The loan officers filed a traditional cross-motion on Excellence Mortgage, Ltd.'s "causes of action based on claims that [the loan officers] had no right to compete for borrowers." CR165-166.  Those four causes of action – identified in Section 1A, above – depend on a court finding that the loan customer identities were "confidential information," as defined by the Employment Agreement, or trade secrets.  CR87-93.  *See* the Second Amended Petition of Excellence Mortgage, Ltd., CR242-251.

Excellence Mortgage, Ltd. filed a Response to the Cross-Motion for Summary Judgment, CR217-241, the pertinent part of which is at CR224:

5

"The loan officers' contention that they are entitled to compete for customers and/or [that] Excellence is not entitled to forbid that competition *does not equal a necessary element* of breach of fiduciary duty, breach of contract, tortious interference, or misappropriation of trade secrets." (emphasis added)

But if the loan officers had the right to compete for the pipeline customers, and Excellence Mortgage, Ltd. had no right to prohibit them, then Excellence Mortgage, Ltd.'s four alternative claims, that its rights were violated solely because of such attempted competition, must all fail. The claim of unlawful solicitation is an essential element of each of the pertinent claims alleged by Excellence Mortgage, Ltd. in its Second Amended Original Petition (CR242-251, Appendix 2) that the loan officers: breached fiduciary duties "by soliciting Excellence's customers," CR246; breached their employment agreements "by disclosing customer information to third parties and/or by soliciting and/or effectuating file transfers from Excellence to third parties;" *id.*; tortiously interfered with the pipeline customers' "contracts and/or potential relationships by soliciting and/or effectuating transfer of files from Excellence to a third party," CR249; and misappropriated trade secrets "by soliciting or in any manner effectuating transfer of files from Excellence to a third party." CR249. The pleadings of the non-movant define and limit the movant's burden on summary judgment. *Smithkline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995).

6

C. *Since there are no material fact issues, this Court should grant summary judgment against the mortgage company parties' claims on their four causes of action against the loan officers.*

Appellants briefed the issues involved in the Cross-Motion at pages 14-16 of Appellants' Brief, at pages 21-22 of Appellants' Reply Brief, and reurged the Cross-Motion at pages 43-44 of the Motion for Rehearing.

In summary, such briefing shows that there is no genuine issue of material fact on the question of whether the loan officers had a right to compete with Georgetown Mortgage, LLC for the customers of Excellence Mortgage, Ltd., when Excellence Mortgage, Ltd. ceased to operate. The undisputed summary judgment evidence establishes conclusively that the loan officers had that right; the mortgage company parties did not proffer evidence to raise a fact issue.

The same question, stated differently, is whether the loan officers conclusively established that the customer identities were not "confidential information" under the company agreements. As separately pointed out in briefing to this Court, the loan officers proffered extensive *uncontroverted* summary judgment evidence that the customer identities were not confidential information or trade secrets. Appellants' Brief, pages 16-22, and summary judgment evidence cited therein; and pages 16-19 and 21-22 of Appellants' Reply Brief. *See* also the chart detailing the summary judgment

7

evidence proving non-confidentiality of customer identities at pages 32-33 of Appellants' Motion for Rehearing. Thus, as a matter of law, the loan officers were not precluded by the "confidential information" provision of the Employment Agreement, CR146-147, from soliciting the former customers of Excellence Mortgage, Ltd.

The loan officers have conclusively shown that they had a right to compete. The mortgage company parties did not put forth evidence to raise a fact issue on that question. And, as pointed out at pages 34-35 of the Motion for Rehearing, *Olander v. Compass Bank,* 172 F.Supp.2d 846 (S.D.Tex. 2001) aff'd 94 Fed.Appx. 651 (5th Cir. 2002) holds that, as a matter of law, loan customer identities are not confidential or proprietary information, and former loan officers have the right to solicit such customers[2].

Since the loan officers had a right to compete with Georgetown for Excellence Mortgage, Ltd.'s former customers, the suit by Excellence Mortgage, Ltd. against the loan officers, alleging that any solicitation of former Excellence Mortgage, Ltd. customers by its former loan officers was unlawful, is groundless. Not only was it lawful for the loan officers to solicit the former customers; under the Court's revised Opinion (pages 15-22), the

---

[2] The *Olander* case was cited with approval by the Texas Supreme Court in *Marsh USA, Inc. v. Cook,* 354 S.W.3d 764, 768, 774 (Tex. 2011).

8

loan officers are entitled to a trial on their antitrust and interference causes of action against the mortgage company parties for preventing such solicitation.

As stated in Appellants' Brief, at page 14,

"The causes of action [by Excellence Mortgage, Ltd. against the loan officers], dependent on such claims that the loan officers had no such right to compete were breach of fiduciary duty, breach of contract-confidential information, tortious interference, and misappropriation of trade secrets. CR 246-247, 249. In other words, since the loan officers had a right to compete for the customers, those causes of action by the mortgage company parties were groundless."

More specifically, as a matter of law under this summary judgment record, the loan officers did not breach fiduciary duties to Excellence Mortgage, Ltd. by trying to compete with Georgetown for the pipeline of mortgage loan customers, because the loan officers had a right to do so. The loan officers did not breach the confidential information provision of the Employment Agreement, CR145-146, nor did they misappropriate trade secrets, because the customer identities were not confidential information or trade secrets. The loan officers did not tortiously interfere with Excellence Mortgage, Ltd.'s prospective contractual relations; the Court has held the opposite, i.e., that there is a genuine issue of material fact as to whether Excellence Mortgage, Ltd. and the other mortgage company parties tortiously interfered with the loan officers' prospective contractual relations

9

with the pipeline customers. In other words, since the Court has properly held that the loan officers' antitrust and interference claims, based on the right to solicit customers, survived summary judgment, it cannot also be true that a fact question exists on whether the loan officers wrongfully solicited the customers of Excellence Mortgage, Ltd. The burden had shifted to the non-movant mortgage company parties to present evidence that the customer identities were confidential information or trade secrets, and they failed to do so.

Again, the four causes of action alleged by Excellence Mortgage, Ltd. which are before this Court[3] are those which are entirely dependent on Excellence Mortgage, Ltd.'s contention that the customer identities were confidential information or trade secrets, and that the loan officers had no right to compete with Georgetown for the Excellence Mortgage, Ltd. pipeline customers. As a matter of law, those causes of action fail, and the loan officers are entitled to traditional summary judgment to that effect.

## II. The Court erred in granting summary judgment against the loan officers' claims of breach of contract.

---

[3] Claims of Excellence Mortgage, Ltd. not before this Court are: (a) that the loan officers improperly used company credit cards and improperly used Excellence Mortgage, Ltd. funds to pay the cards (CR246, 250); (b) that the loan officers breached the Settlement Agreement between Excellence Mortgage, Ltd. and Premier; and (c) that two of the loan officers owe for draws against commissions. CR247-249. *See* Appellants' Brief, page 25.

A.    *Standard of Review*

A motion for summary judgment must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Independent School District*, 858 S.W.2d 337, 340 (Tex. 1993). A contrary approach – allowing a summary judgment to be based on grounds never raised by the movant in the trial court – "may prejudice the non-movant's ability to demonstrate" that a fact issue exists on the issue or issues serving as the basis for that summary judgment." *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *Oleksy v. Farmers Insurance Exchange*, 410 S.W.3d 378, 385 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); T. PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE, AND REVIEW, §3.05 (3d ed. 2013).

Here, the mortgage company parties did not move for summary judgment on the issue of the contract's silence on termination without cause, or on the court's duty to supply a reasonable compensation term to the contract. As a result, the loan officers did not develop the summary judgment record on what constituted reasonable compensation under the circumstances. Summary judgment can therefore not be granted against the loan officers on that issue; summary judgment here should be limited to a finding that the loan officers are entitled to reasonable compensation, the

amount to be determined by the trial court after hearing evidence on custom or usage, course of dealings, or other circumstances.

B.   *Standards for Resolving Omitted Terms in Contracts*

RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981), "Supplying an Omitted Essential Term," (Appendix 3) provides:

> "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is *reasonable in the circumstances* is supplied by the court." (emphasis added)

The parties have not developed the *circumstances* sufficiently in this summary judgment record for this Court to supply the missing reasonable terms. That is because the mortgage company parties' summary judgment motion did not seek to establish such circumstances, nor did it even recognize that the term was missing. The loan officers showed, and this Court found, that a reasonable term must be supplied by the Court for compensation of a loan officer who is terminated without cause.

An important legal article, influential in formulating § 204 and cited in its Reporter's Notes is E. Allan Farnsworth, *Disputes over Omissions in Contracts*, 68 COLUM. L. REV. 860 (1968). Farnsworth argues that the method by which a court resolves a missing contract term, once it has determined that there is one, can best be described as *inference.*

12

In this process of inference, there are two premises. First, the Court looks to the actual expectations of the parties. Actual expectations can sometimes be gleaned from the language of the contract itself: a specific provision dealing with a related situation may suggest that the parties intended an opposite result in the case at hand; or a recital may indicate their intention on a matter not otherwise covered; or actual expectations may be established from the course of dealing in prior transactions or from a custom or usage of trade.

The second premise involves basic principles of fairness and justice which the court uses to extrapolate from the situations for which the parties have provided in the contract to the missing terms for which they have not. *Id.* at 876-877.[4]

In considering the first premise, the Court should recognize that the Personnel Production Compensation Plan is a form contract of Excellence Mortgage, Ltd., and non-negotiable by the loan officers. Hence, the "burden of expression" to include the missing term in the contract should be on the mortgage company. As the drafter of the form contract, the risk of owing

---

[4] RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981) cmt. e, provides:

> "Where there is in fact no agreement [of the parties on a missing contract provision], the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process."

post-termination commissions should be on it.  *See* Farnsworth, *supra,* 68 COLUM. L. REV. at 883.

C.     *The Court erred in supplying the missing term in the contract, since traditional summary judgment was not sought on that basis.*

The determination of reasonable compensation where the contract is silent should be based on all the circumstances, including course of dealings with loan officers in the past, or relevant usage of trade, which facts were not fully developed in the record.  Nor did the loan officers have a duty to develop such facts in response to the traditional summary judgment motion.  The mortgage company parties' summary judgment motion relied only on the false assumptions that the loan officers had voluntarily resigned or were terminated for cause, situations expressly covered by the Plan.

The mortgage company parties sought traditional summary judgment to dismiss the loan officers' claims for breach of contract by failure to pay commissions on the pipeline loans.  The *only* stated grounds for summary judgment were that, under the Production Personnel Compensation Plan, CR161-169, (1) "a *voluntarily terminated* employee is not entitled to a commission that closed and funded after October 1, 2010;" (2) "An employee who is terminated by Excellence [for cause] is entitled to "no further commissions;" and (3) the loan officers "have no right to leave an employer

and attempt to strip that employer of its business." Counterdefendants' Motion for Summary Judgment, CR126. In other words, the mortgage company parties contended that the contract language precluded further compensation because the loan officers had voluntarily resigned. Since the summary judgment record at least creates a fact issue on whether the loan officers did not quit Excellence Mortgage, Ltd., but were terminated by Excellence Mortgage, Ltd.'s cessation of operations, Opinion p. 10, summary judgment should simply be denied.

The mortgage company parties did not contend that the Court should supply the missing term that reasonable compensation is due, and that such compensation ceases as of the date of termination, as the Court held. The loan officers did not develop the issue of what constitutes reasonable compensation because that issue was not raised by the Motion. Both sides should be able to put forth evidence on what constitutes reasonable compensation after remand.

The Court's Opinion on Motion for Rehearing negates all three grounds asserted by the mortgage company parties for summary judgment on the loan officers' breach of contract claims. The Court found that the record at least creates a fact issue on whether the loan officers voluntarily quit their jobs or were terminated by Excellence Mortgage, Ltd. in its "restructuring."

Opinion, p. 9. And a fact issue was also found on whether the mortgage company parties unlawfully prevented the loan officers from competing for the pipeline. Opinion, pp. 17-21. Therefore, summary judgment should simply be denied.

D. *Even if the Court properly decided the question of what constitutes reasonable compensation, its determination is in error as to such compensation after termination without cause.*

The Court correctly held that the Production Personnel Compensation Plan is silent as to commissions payable on the pipeline of loans when the Company, as here, ceases to operate and to employ loan officers. *See* CR162, Plan provision VII on "Termination of Employment." The Court also properly held that the loan officers were therefore entitled to reasonable compensation for their work done on the pending loans, some of which were close to closing. Opinion, p. 10. As stated, the Court should simply reverse the summary judgment on this issue and remand to the trial court for the determination of what constitutes reasonable compensation.

However, even if the Court is of the opinion that it should determine what constitutes reasonable compensation on this record, the Court's determination that the same compensation should be payable to a loan officer who voluntarily quits as one who is involuntarily terminated without cause is not based on evidence and is not reasonable. The Court should

keep in mind that compensation for extensive work done and value provided – the livelihood of these workers – is at stake. The workers are by no means in the same situation as the Company, which can unfairly benefit by not paying commissions on the pipeline loans simply by closing its doors. In other words, though either party can terminate the employment at will, only the Company is in the position to take advantage of the other's work.

The second Affidavit of Robin Morton, at CR177, sets out some of the work done by the loan officers on a mortgage loan file. This includes "gathering and documenting" information "including the customers' credit report, paystubs, federal tax returns, asset statements, divorce decrees, bankruptcy papers, letters of explanation, and more. [The loan file] also contains information and documentation pertinent to the property such as the earnest money contract, title work, property tax certificate, survey, HUD-1 statement(s), appraisal, inspection report(s), and other information relating to the property." Additionally, the Affidavit of Stefen Brooks shows that the loan officer usually was the only person who sold the loan to the customer and who had the relationship with the customer, which relationship sometimes "extended for over a year through interim financing, home construction, and permanent financing." CR322.

17

Under the Production Personnel Compensation Plan, if a loan officer *had voluntarily terminated his position at* Excellence Mortgage, Ltd., he had agreed in writing to accept only commissions from funded transactions up to the date of leaving the company; he could protect himself by the timing of his departure, or negotiate for commissions post-leaving. If a loan officer was *terminated for cause*, he had agreed in writing to receive no further commissions at all.

But, for example, if Excellence Mortgage, Ltd. were to take a liquidation bankruptcy, thus terminating its loan officers' employment *without cause,* it would not be reasonable under the Plan to cut off all rights to commissions as of the date of the bankruptcy filing; if mortgage closings occurred after the date of filing, the involuntarily terminated loan officers should receive a reasonable commission for the work done on any such loans.

Similarly, in this case Excellence Mortgage, Ltd. went through "restructuring." It suddenly "for its convenience" terminated the positions of all of its loan officers and ceased generating new mortgage loans. The loan officers had built the pipeline of pending loans and should have received a reasonable commission for their work on any pipeline loans closed after their involuntary termination without cause. This is especially the case for loans

18

on which all work had been done and which were simply awaiting closing on the date of termination.

As the Court points out, the contract is silent as to the right to commissions in any case where a loan officer is terminated without cause. The silence of the contract on this important issue -- what commissions are due in the common situation when an employee or group of employees is terminated without cause -- indicates that the parties did not intend to specifically limit the loan officers' rights to commissions or partial commissions on loans closed after termination without cause. That is, loan officers should receive all or a portion of the commission depending on the amount of work done on the file.

A similar case was *Fujimoto v. Rio Grande Pickle Co.,* 414 F.2d 648 (5th Cir. 1969). In that case, the employment contract was silent as to whether a ten per cent employee bonus based on annual "net profits" was due, where the employee left before the end of the year. The Court found that the bonus was due proportionately through the date of termination, but that fact questions existed as to the calculation of the net profits through the date of termination. *Id.* at 653.

Here the loan officers should be entitled to commissions proportionate to the work done on any loans closed by Excellence Mortgage, Ltd. after the cessation of operations.[5]

Other terms of the Production Personnel Compensation Plan also point to a probable intent to compensate loan officers when the company ceases operations. The Plan provides for "Draws Against Commissions" (CR161), which two of the loan officers had allegedly taken at the time Excellence Mortgage, Ltd. ceased operations. A reasonable interpretation would find that the post-termination repayment of such draws would be offset against commissions from loan closings which occur after the termination. If no earned commissions are due after involuntary termination, as argued by the mortgage company parties, then the loan officer would not only lose his earned commissions but would also owe the company for the draws, a blatantly unreasonable and unfair interpretation.[6]

Additionally, the Plan contemplates the discretionary payment of all or a portion of a loan officer's commissions after he or she voluntarily leaves

---

[5] Such amounts have been partially calculated by Robin Morton, and are in the summary judgment evidence at CR298-317.

[6] As stated, Excellence Mortgage, Ltd. is suing two of the loan officers for draws. CR247.

the Company, where the loan officer can determine the time of his or her exit to minimize outstanding commissions.[7]

The omitted contract term, i.e., what commissions are due when all loan officers are suddenly terminated without cause, should reasonably provide that the loan officers would be paid all or the earned portion of their contracted-for commissions for closings that occurred after the involuntary termination. If this Court will not remand to the trial court to allow both sides to develop additional evidence on what constitutes reasonable compensation, then the Court should find that the loan officers are entitled to such proportionate commissions for post-termination closings, the amount to be determined upon remand.

## CONCLUSION AND PRAYER

The loan officers of Excellence Mortgage, Ltd. were responsible for developing a pipeline of over $48 million in pending loans at the time Excellence Mortgage, Ltd. ceased operations, and such loans represented

---

[7] The Plan provides: "With respect to a voluntary termination, it is the Company's general policy not to pay any commissions on loans that close and fund after the effective date of the loan officers' termination. However, the Production Manager has the discretion to pay all, or a portion of, the commissions on loans that close and fund after the effective date of termination if the Production Manager, with the concurrence of the President or CEO of the Company, can document those [sic] circumstances warrant such consideration. Those circumstances might include the fact that the loan officer gave adequate advanced notice; was leaving the Company for a new career opportunity; or otherwise demonstrated a responsible attitude in his/her dealings with the Company. In the event such an exception is made, the Loan Officer will be provided, in writing, specific details regarding such prior to their actual departure." (CR162)

21

commissions to the loan officers of over $600,000. First Morton Affidavit, at CR 299. The loan officers were unlawfully prevented by the mortgage company parties from recovering any portion of those commissions, and are entitled to a trial on their alternative causes of action arising out of such unlawful conduct by the mortgage company parties.

WHEREFORE, PREMISES CONSIDERED, Appellant loan officers pray that the Court supplement and revise its Opinion on Motion for Rehearing to:

(1) Grant the loan officers' Motion for Summary Judgment on Excellence Mortgage, Ltd.'s causes of action for breach of fiduciary duty, breach of contract–confidential information, tortious interference and misappropriation of trade secrets;

(2) Deny the mortgage company parties' Motion for Summary Judgment on the loan officers' claims for breach of contract;

(3) Remand all of the loan officers' claims for trial; and

(4) Grant such other relief as may be appropriate.

Respectfully submitted,

RILEY & RILEY
ATTORNEYS AT LAW

By:_____
DARBY RILEY
Texas Bar No. 16924400
320 Lexington Avenue
San Antonio, Texas  78215
Telephone:  (210) 225-7236
Telecopier:  (210) 227-7907
darbyriley@rileylawfirm.com
ATTORNEY FOR APPELLANTS,
BARRY BROOKS, ET AL.

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this Second Motion for Rehearing contains 4,267 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance).  This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text.  In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____
DARBY RILEY

23

## CERTIFICATE OF SERVICE

I certify that on the 29th day of April 2015, a true and correct copy of the foregoing Second Motion for Rehearing of Appellants was served to the following counsel of record, in the manner indicated.

Samuel V. Houston, III  
HOUSTON DUNN, PLLC  
4040 Broadway, Suite 440  
San Antonio, Texas  78209

**Via e-serve: sam@hdappeals.com**

William H. Ford  
Gregory A. Scrivener  
THE FORD FIRM  
10001 Reunion Place, Suite 640  
San Antonio, Texas  78216

**Via e-serve: bill.ford@ford-firm.com**  
**Via e-serve: greg.scrivener@ford-firm.com**

_____  
DARBY RILEY

# APPENDIX 1



# Fourth Court of Appeals
## San Antonio, Texas

### JUDGMENT

No. 04-13-00106-CV

Barry **BROOKS**, Heston C. King, Stefen Douglas Brooks, Johanna Barton, and Jesse Rodriguez Benavides,
Appellants

v.

**EXCELLENCE MORTGAGE, LTD.,**
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-01173
Honorable Cathleen M. Stryker, Judge Presiding

BEFORE CHIEF JUSTICE STONE,[1] JUSTICE BARNARD, AND JUSTICE ALVAREZ

In accordance with this court's opinion of this date, the portion of the trial court's order granting Excellence Mortgage, Ltd.'s traditional motion for summary judgment on Appellants' breach of contract claims is AFFIRMED.

The portion of the trial court's order disposing of Appellants' antitrust and interference with prospective business relations claims is REVERSED.

We REMAND this cause to the trial court for further proceedings.

We tax costs of this appeal against the party that incurred them. *See* TEX. R. APP. P. 43.4.

SIGNED April 1, 2015.

_____
Patricia O. Alvarez, Justice

---

[1] Chief Justice Catherine M. Stone, retired, not participating.



# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00106-CV

Barry **BROOKS**, Heston C. King, Stefen Douglas Brooks, Johanna Barton,
and Jesse Rodriguez Benavides,
Appellants

v.

**EXCELLENCE MORTGAGE, LTD.,**
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-01173
Honorable Cathleen M. Stryker, Judge Presiding[1]

### OPINION ON MOTION FOR REHEARING

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Catherine Stone, Chief Justice, retired (not participating)
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  April 1, 2015

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

On May 30, 2014, we issued an opinion and judgment in this appeal. On July 14, 2014,

Appellants Barry Brooks, Heston C. King, Stefen Douglas Brooks, and Jesse Rodriguez Benavides

(collectively Brooks Appellants), and Appellant Johanna Barton, filed a motion for rehearing. On

---

[1] The Honorable Cathleen Stryker signed the July 18, 2012 order granting in part Excellence's traditional motion for summary judgment. The Honorable Peter Sakai, Presiding Judge of the 225th Judicial District Court, signed the severance order which made the July 18, 2012 order final.

October 17, 2014, Appellee Excellence Mortgage, Ltd. filed its response. We grant the motion for rehearing, withdraw our opinion and judgment of May 30, 2014, and substitute this opinion and judgment in their stead. We affirm the portion of the trial court's order granting Excellence's motion for summary judgment on Appellants' breach of contract claims. We reverse the portion of the trial court's order disposing of Appellants' antitrust and interference with prospective business relations claims, and we remand this cause to the trial court.

## BACKGROUND

Appellants worked as loan officers for Excellence during 2010. In September 2010, Excellence's owners began restructuring the company. The restructuring included discussions with Georgetown Mortgage, LLC and ultimately the creation of a new entity, MG Mortgage.

During the last week of September 2010, Excellence loan officers were trained by a corporate trainer from Georgetown. The loan officers were asked to sign employment applications for Georgetown. The Brooks Appellants contend the terms of their possible employment at Georgetown were much less favorable than the terms under which they were employed at Excellence. The Brooks Appellants each decided not to accept employment at Georgetown.

### A.  Appellants Leave Excellence

Appellant Johanna Barton was terminated from her employment with Excellence not later than September 28, 2010. On October 1, 2010, the Brooks Appellants each tendered signed letters of resignation to Excellence. By October 4, 2010, Appellants had accepted employment as loan officers at Premier Nationwide Lending. When Appellants left their employment with Excellence, a "pipeline" of pending interim and permanent residential mortgage loan transactions, in varying stages of development, had not yet been finalized. None of the ninety-one loans about which Appellants complain closed and funded before October 1, 2010.

Appellants notified at least some of the Excellence pipeline loan customers, with whom they had been working, of their move to Premier. Appellants contend that each pipeline customer chose to transfer their files from Excellence to Premier so the customer could work with the same loan officers to complete their transactions. Some pipeline customers subsequently sent letters to Excellence asking for their files to be transferred to Premier.

## B.      Procedural Background

On October 7, 2010, Excellence filed suit for a temporary restraining order, injunction, and damages against Premier and each appellant. The trial court granted a temporary restraining order enjoining Appellants and Premier from, among other things, using Excellence's allegedly confidential information to contact any of Excellence's customers served by Appellants while employed by Excellence. Shortly thereafter, Excellence settled their claims against Premier. Premier returned the transferred pipeline loan files and agreed not to accept further transfers from Excellence. Appellants assert Excellence's actions prevented them from earning commissions on the pipeline loans and they suffered severe financial losses.

In March 2011, Appellants filed a counterclaim[2] against Excellence asserting various causes, including breach of contract, unlawful restraint of trade, and interference with prospective business relations. Excellence moved for traditional and no-evidence summary judgment against Appellants' breach of contract, interference, and antitrust claims. Appellants filed a response and moved for traditional and no-evidence partial summary judgment as to Excellence's claims: breach of contract, breach of fiduciary duty, tortious interference with prospective contracts, trade secret

---

[2] In their first amended counterclaim, Appellants added LATD-1, LLC; Grothues Financial, Ltd.; Grothues Brothers Management I, LLC; and Georgetown Mortgage, LLC as defendants (Grothues defendants). However, Appellants moved for summary judgment only against Excellence's claims.

misappropriation, breach of contract claim arising out of settlement agreement with Premier, and fraud.

After a hearing, on July 18, 2012,[3] the trial court granted summary judgment for Excellence against Appellants' (1) breach of contract claims for loans closed and funded after October 1, 2010, (2) interference with prospective business relations claims, and (3) antitrust claims. All the relief Appellants sought in their traditional and no-evidence summary judgment motions was denied. The trial court subsequently severed all the issues disposed of by the July 18, 2012 order.

## SUMMARY JUDGMENT

### A. Jurisdiction Over a Trial Court's Denial of Summary Judgment

The first issue we address is whether this court has jurisdiction over the denial of Appellants' motion for summary judgment.

Appellants contend the motions for summary judgment are competing motions "on the same issues," *see Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (permitting an appellate court to review orders on competing motions on the same issues), and thus the general rule that a party cannot appeal the denial of a motion for summary judgment is inapplicable, *see Gulley v. State Farm Lloyds*, 350 S.W.3d 204, 206 (Tex. App.—San Antonio 2011, no pet.) ("Generally, an order denying a summary judgment motion is not appealable because it is an interlocutory order and not a final judgment." (citing *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (per curiam)).

Excellence counters that for the competing motions exception to apply, "both parties must ordinarily have sought final judgment relief in their cross motions for summary judgment." *CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam). Excellence argues the

---

[3] In a Rule 11 agreement, the parties agreed the trial court would consider only Excellence's traditional motion; it would not consider Excellence's no-evidence motion.

parties only sought *partial summary judgment*—Excellence sought summary judgment on Appellants' counterclaims and Appellants requested summary judgment against some, but not all, of Excellence's claims.

The general rule is that a party cannot appeal the denial of a motion for summary judgment. *See Humphreys*, 888 S.W.2d at 470; *Cont'l Cas. Co. v. Am. Safety Cas. Ins. Co.*, 365 S.W.3d 165, 172 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). "The party's remedy is to assign error to the trial court's judgment ultimately rendered following trial on the merits." *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). We may review such a denial when both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611 (Tex. 2012) (citing *Valence Operating Co.*, 164 S.W.3d at 661 (reviewing competing partial summary judgment motions)).

We conclude that Appellants' claims as to breach of fiduciary duty, breach of contract—confidential information, tortious interference, and misappropriation of trade secrets stem from, and are based on, the same factual elements and legal analysis as the relief sought by Excellence's motion for summary judgment; the competing motions are based on the same issues. Accordingly, we have jurisdiction over this appeal. *See Valence Operating Co.*, 164 S.W.3d at 661; *see also Lenk*, 361 S.W.3d at 611.

We turn to the substance of the summary judgment.

**B.      Standard of Review**

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant movant may make that showing by conclusively disproving at least one

essential element of the plaintiff's claim. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995).

To determine whether the defendant movant met its burden, we examine "the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

If the defendant movant meets its burden and the plaintiff's response fails to raise a genuine issue of material fact on each essential element, the defendant movant is entitled to judgment on its motion. *See Elliott–Williams*, 9 S.W.3d at 803; *Doe*, 907 S.W.2d at 476–77.

## C. The Brooks Appellants' Breach of Contract Claims against Excellence

The trial court granted Excellence's traditional motion for summary judgment against the Brooks Appellants' breach of contract claims for commissions earned on the pipeline loans—those loans that closed and funded after October 1, 2010. The trial court did not grant summary judgment on the Brooks Appellants' breach of contract claims for loans closed and funded on or before October 1, 2010; those claims are not before us. On the Brooks Appellants' breach of contract claims that are before us, the parties disagree on the voluntariness of the Brooks Appellants' terminations, the effective dates of their terminations, and what compensation Excellence owes the Brooks Appellants.

*1. Arguments of the Parties*

Each of the Brooks Appellants concedes they submitted a letter of resignation effective October 1, 2010. They insist that it was not until after their resignations were submitted that they came to understand Excellence had ceased operations on September 22, 2010—nine days before their resignations otherwise became effective. The Brooks Appellants argue that when Excellence ceased operations, their employment with Excellence was involuntarily terminated. They argue their resignation letters had no effect because they *could not have resigned* from a company that *did not exist*. Thus, they contend, Excellence breached their employment contracts by failing to pay them commissions they earned including those associated with approximately ninety-one pipeline loans.

Excellence counters it did not breach the employment agreement because the Brooks Appellants were not entitled to commissions on loans that closed and funded after they resigned. Excellence asserts the Brooks Appellants were paid for employment through September 30, 2010, and they were properly compensated in accordance with the company's Production Personnel Compensation Plan. Excellence contends the Brooks Appellants voluntarily terminated or resigned and were therefore bound by the compensation provisions for voluntary termination. Excellence moved for summary judgment on the Brooks Appellants' breach of contract claims.

*2.     Summary Judgment Evidence*

In its traditional motion for summary judgment, Excellence proffered the following summary judgment evidence.

a.     <u>Kevin Sullivan Deposition</u>

In his deposition, Sullivan stated the following. For the period in question, he was the Chief Financial Officer of Excellence Mortgage. Excellence compensated its loan officers in

accordance with the Production Personnel Compensation Plan. The Plan applied to all of its loan officers including each of the Brooks Appellants.

### b. Letters of Resignation

The Brooks Appellants submitted letters of resignation dated October 1, 2010. In their virtually identical letters, each asked to be paid their "commissions due for August and September 2010 closed loan files" "per my executed compensation plan with Excellence Mortgage."

### c. Employment Contract Documents

Excellence, in its motion for summary judgment, attached copies of Employment Agreements for Robin C. Morton, Heston C. King, Barry A. Brooks, and Stefen Brooks; Confidentiality Agreements for January M. Goette and Johanna Barton; and a Production Personnel Compensation Plan for Heston King.

*3. Brooks Appellants' Breach of Contract Claims*

We begin our review by determining whether Excellence met its burden to conclusively disprove any essential element of the Brooks Appellants' breach of contract claims. *See Elliott-Williams*, 9 S.W.3d at 803.

### a. Elements of Breach of Contract

The elements of a breach of contract claim are "'(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.'" *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.) (quoting *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.)). Excellence moved for summary judgment on the ground that the Plan is a valid contract which defines its obligations to the Brooks Appellants, and it did not breach the Plan.

We turn to the applicability and provisions of the Plan.

b.  Production Personnel Compensation Plan Applies to Loan Officers

The summary judgment evidence contains a Plan signed by Heston King; no other Plans were proffered. In the Brooks Appellants' letters of resignation, each asked for payment in accordance with "my executed compensation plan with Excellence Mortgage, Ltd." Consistent with the letters of resignation, Sullivan's affidavit states that all the loan officers signed a Production Personnel Compensation Plan with the same terms as those in Heston King's plan.

Sullivan's statement was uncontroverted, "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *See* TEX. R. CIV. P. 166a(c); *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997).

Therefore, we conclude that each Brooks Appellant signed a Plan with the same terms as shown in Heston King's Plan, and the Plan's provisions apply to each of the Brooks Appellants.

c.  Loan Officers were Involuntarily Terminated

In their affidavits, the Brooks Appellants state they were involuntarily terminated because Excellence ceased operations sometime before October 1, 2010, and thus their letters of resignation were ineffective as a matter of law. Although Kevin Sullivan stated that the Brooks Appellants resigned voluntarily, under the applicable standard of review, we take the Brooks Appellants' affidavits as true and conclude they raised a genuine issue of material fact on whether they were involuntarily terminated. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49.

We next examine the Plan to determine which of its provisions apply to the Brooks Appellants' terminations.

d.  Production Personnel Compensation Plan

In the Plan, section VII, Termination of Employment, addresses a loan officer's termination.

- 9 -

(1)     Voluntary Terminations

Section VII.A provides terms applicable "[i]n the event of voluntary termination." For voluntary terminations, the Plan requires Excellence to pay commissions the loan officer earned "on any loan closed and funded (as provided above in Section IV) up to and including the effective date of termination." The Plan also states the "Production Manager has the discretion to pay all, or a portion of, the commissions on loans that close and fund after the effective date of the Loan Officer's termination."

(2)     Terminations for Cause

Section VII.B provides terms applicable "[i]n the event a Loan Officer is terminated by the Company for cause." In such a case, the Plan states "[n]o further commissions will be paid to the Loan Officer."

(3)     Involuntary Terminations by Excellence

Section VII of the Plan states compensation terms for voluntary terminations and terminations for cause. But the Brooks Appellants assert, and we agree, the Plan is silent on what terms apply if a loan officer's at-will employment is involuntarily terminated by Excellence "for any reason or no reason at all," including for Excellence's convenience.[4] *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (addressing at-will employment doctrine). In their brief, the Brooks Appellants suggest that if a contract is silent on an essential term or provision, courts may infer a reasonable contract term. We agree. We review the law regarding contracts which are silent on a question that the court must answer.

---

[4] We use the term convenience as a substitute for "any reason or no reason at all," *see O'Bryant*, 18 S.W.3d at 216 (addressing at-will employment doctrine), and to distinguish an involuntary termination for convenience from an involuntary termination for cause.

e.     Supplying a Missing Plan Term

"A court cannot make contracts for the litigants appearing before it. But, there are instances where it can add to a contract already in existence or supply a missing term or provision." *In re G.D.H.*, 366 S.W.3d 766, 770 (Tex. App.—Amarillo 2012, no pet.) (citation omitted); *accord Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied) ("In certain situations, a court may uphold an agreement by supplying missing terms."); *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App.—San Antonio 1998, pet. denied). When a valid contract exists, but the "contract is silent on an issue, Texas courts will infer reasonable terms." *Lidawi v. Progressive Cnty. Mut. Ins. Co.*, 112 S.W.3d 725, 731–32 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (inferring a contract term when reviewing competing motions for summary judgment); *accord Woodward v. Liberty Mut. Ins. Co.*, CIVA 3:09-CV-0228-G, 2010 WL 1186323, at *5 (N.D. Tex. Mar. 26, 2010) (quoting *Lidawi*); *Tex. Taco Cabana L.P. v. Taco Cabana of N.M., Inc.*, CIV.A. SA-02-CV-1209, 2005 WL 1397032, at *8 (W.D. Tex. June 10, 2005) (quoting *Lidawi*). We assume the parties intended the contract to operate reasonably, and we may infer a reasonable term. *See Lidawi*, 112 S.W.3d at 732 ("'Where the precise details of an agreement have not been defined by the parties, the court should assume the parties implicitly intended the agreement to operate in a reasonable manner.'" (quoting *State Farm Fire & Cas. Co. v. Tan*, 691 F. Supp. 1271, 1273 (S.D. Cal. 1988))); *O'Farrill Avila*, 974 S.W.2d at 244.

We will not supply a term that contradicts the parties' intent stated by the contract language. *Oakrock Exploration Co.*, 87 S.W.3d at 690; *Clovis Corp. v. Lubbock Nat'l Bank*, 194 S.W.3d 716, 719 (Tex. App.—Amarillo 2006, no pet.). Instead, we look to the contract language for guidance in inferring a reasonable term. *See Lidawi*, 112 S.W.3d at 732; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981) cmt. d ("[T]he probability that a particular term would

- 11 -

have been used if the question had been raised may be [a] factor[] in determining what term is reasonable in the circumstances."); *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966) (implying a reasonable sale price).

### f.    Plan's Termination Compensation Terms

The Plan is silent on what terms should apply if a loan officer's employment is involuntarily terminated for Excellence's convenience. *See Lidawi*, 112 S.W.3d at 731. To infer a reasonable term in case of a loan officer's involuntary termination for Excellence's convenience, we look to the employment relationship documents. *See id.* Under the Employment Agreement, either the loan officer or Excellence could terminate the employment relationship for their own convenience.[5] Under the Plan, if the loan officer exercised the officer's right to terminate the employment relationship, Excellence must pay the loan officer the "commissions [earned] . . . on any loan closed <u>and</u> funded . . . up to and including the effective date of termination."[6]

### g.    Supplying a Reasonable Term

For the following reasons, we conclude that a reasonable term for compensation in the event of Excellence's termination of a loan officer's employment for its convenience is the same compensation due for the loan officer's voluntary termination of employment for the loan officer's convenience. *See In re G.D.H.*, 366 S.W.3d at 770; *Lidawi*, 112 S.W.3d at 731–32.

Under the Plan the Brooks Appellants signed, upon the loan officer's voluntary termination, the loan officer was entitled to the commissions earned on those loans closed and funded up to and including the effective date of termination. The Brooks Appellants did not agree

---

[5] The Employment Agreement states "The employment relationship is 'at-will.'" An at-will employment relationship "generally can be terminated by either party for any reason or no reason at all." *O'Bryant*, 18 S.W.3d at 216; *accord Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993).

[6] In its sole discretion, Excellence could "pay all, or a portion of, the commissions on loans that close and fund after the effective date of termination." The Brooks Appellants do not assert that Excellence exercised its discretion to pay them commissions on loans closed and funded after October 1, 2010.

to receive less compensation, and Excellence did not commit itself to pay more compensation, than that specified for the loan officer's voluntary termination. Each party had a symmetrical right to end the employment relationship for their own convenience. *See O'Bryant*, 18 S.W.3d at 206 (at-will employment agreements). The Brooks Appellants accepted the Employment Agreement and the Plan, and the record does not show the Brooks Appellants sought to modify the Plan to include more favorable terms for termination for Excellence's convenience than for voluntary termination for the loan officer's convenience.

We conclude a reasonable term for compensation for a loan officer's employment being involuntarily terminated for Excellence's convenience is the same compensation due in the event of a voluntary termination by the loan officer for the loan officer's convenience: commissions earned "on any loan closed and funded . . . up to and including the effective date of termination." *See In re G.D.H.*, 366 S.W.3d at 770; *Lidawi*, 112 S.W.3d at 731–32.

We turn now to the question of whether Excellence breached its contractual obligations to the Brooks Appellants.

h.     Loans Closed and Funded After October 1, 2010

The Brooks Appellants claim Excellence breached their employment contract by failing to pay them the commissions they earned on loans closed and funded before, on, and after October 1, 2010.[7] As we have determined, Excellence had a contractual obligation to pay the Brooks Appellants the commissions they earned on loans closed and funded up to and including the effective date of their terminations. However, construing the Employment Agreement and the Plan, we also conclude Excellence had no obligation to pay the Brooks Appellants commissions

---

[7] Appellants also sued for damages under quantum meruit. Excellence did not move for summary judgment on, and the trial court's summary judgment did not dispose of, Appellants' quantum meruit claims. The quantum meruit claims are not before us.

- 13 -

on loans closed and funded after the effective date of their terminations. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (stating courts construe unambiguous contracts as a matter of law).

Regardless of whether the Brooks Appellants were involuntarily terminated before October 1, 2010, or they voluntarily resigned on October 1, 2010, their effective dates of termination were not later than October 1, 2010. Excellence met its burden to show it is entitled to judgment as a matter of law on the Brooks Appellants' breach of contract claims for loans closed and funded after October 1, 2010. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. Therefore, as a matter of law, Excellence did not breach its contractual obligations to the Brooks Appellants by refusing to pay the commissions for loans that closed and funded *after* October 1, 2010. Thus, the trial court did not err by granting Excellence's traditional motion for summary judgment on the Brooks Appellants' breach of contract claims for loans closed and funded after October 1, 2010.

**D.    Johanna Barton's Breach of Contract Claims against Excellence**

Barton sued Excellence for, inter alia, breach of contract.[8] She alleged Excellence failed to pay her commissions she earned on loans closed and funded before, on, and after the effective date of her termination.

The trial court granted summary judgment against Barton's breach of contract claim for commissions earned on loans closed and funded after October 1, 2010.[9] As we have already concluded, under the Plan, Excellence was not obligated to pay commissions to any loan officer for loans closed and funded after the loan officer's effective date of termination. In Barton's case,

---

[8] Because Barton was subsequently hired by Premier, her other claims are properly addressed with the other appellants' claims, specifically the interference with prospective business relations and antitrust under the Texas Business and Commerce Code claims.

[9] The trial court did not grant summary judgment on Barton's claim for loans closed and funded on or before October 1, 2010, and that claim is not before us.

- 14 -

the summary judgment evidence shows Excellence terminated her employment relationship not later than September 28, 2010.

Without deciding whether Barton was effectively terminated prior to September 28, 2010, we conclude Barton's effective date of termination was not later than September 28, 2010. As a matter of law, Barton was not entitled to any commissions on loans closed and funded after her termination date. Thus, the trial court did not err in granting summary judgment against Barton's claim for commissions on loans closed and funded after October 1, 2010.

### E.    Appellants' Antitrust Claims against Excellence

After Excellence sought an injunction to prevent Appellants from contacting pipeline loan customers, Appellants countersued Excellence and the Grothues defendants. Appellants argued and proffered evidence that Excellence and the Grothues defendants prevented Appellants from competing for the pipeline loan customers and their actions comprise an unlawful restraint under the Antitrust Act. The trial court granted Excellence's motion against Appellants' antitrust claims.

#### 1.    Summary Judgment Burdens

To be entitled to summary judgment, Excellence had to conclusively disprove at least one essential element of Appellants' claims. *See Elliott-Williams*, 9 S.W.3d at 803; *see also G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). It also had to show there were no genuine issues of material fact and it was entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Elliott-Williams*, 9 S.W.3d at 803. Excellence was not entitled to judgment against Appellants' antitrust claims if, for each challenged essential element, the summary judgment evidence shows a genuine issue of material fact exists. *See Elliott-Williams*, 9 S.W.3d at 803.

2. *Summary Judgment Evidence Requirements*

Appellants provided summary judgment evidence in their own motion and in response to Excellence's motion for summary judgment. Because both sides moved for summary judgment, we review *all* the summary judgment evidence "in the light most favorable to the party against whom the summary judgment was rendered." *See Mann Frankfort*, 289 S.W.3d at 848 (citing *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)); *see also Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

Appellants' evidence included affidavits showing Excellence's actions caused an adverse effect on competition. Although Appellants are interested witnesses, their affidavits—when examined to determine whether they raise a fact issue sufficient to defeat Excellence's traditional motion—are not required to be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies." *See* TEX. R. CIV. P. 166a(c); *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 827 (Tex. App.—Fort Worth 2008, no pet.); TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 6.03[9][a] (3d ed. 2013).

In reviewing Appellants' affidavits, unless an affiant's statement is entirely conclusory, *see Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997), we take the statement as true, and resolve all doubts and make every reasonable inference in the nonmovant's favor, *Nixon*, 690 S.W.2d at 548–49.

Before we examine the evidence, we review the elements of an antitrust claim.

3. *Texas Antitrust Act*

The Texas Free Enterprise and Antitrust Act of 1983 prohibits "[e]very contract, combination, or conspiracy in restraint of trade or commerce." TEX. BUS. & COM. CODE ANN. § 15.05(a) (West 2011); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990); *see* TEX.

BUS. & COM. CODE ANN. § 15.01 (Title of Act). "To establish that a defendant contracted, combined, or conspired in restraint of trade in violation of section 15.05(a), a plaintiff must show that the alleged contract, combination, or conspiracy is unreasonable and has an adverse effect on competition in the relevant market." *Marlin v. Robertson*, 307 S.W.3d 418, 427 (Tex. App.—San Antonio 2009, no pet.).

### 4. *Evidence of an Antitrust Violation*

Appellants' summary judgment evidence of Excellence's alleged antitrust violation includes affidavits from Robin C. Morton, John H.P. Hudson, and Stefen D. Brooks. To determine whether Excellence conclusively disproved any essential element of Appellants' antitrust claims, we review the summary judgment evidence for each essential element. *See Elliott-Williams*, 9 S.W.3d at 803; *see also G & H Towing Co.*, 347 S.W.3d at 297.

### a. Unreasonable Practice

The first element is an unreasonable practice. *Marlin*, 307 S.W.3d at 427. To evaluate reasonableness, courts divide practices into two categories; the first category is those that are illegal per se. *Id.* (citing *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978)). The second category comprises those "whose competitive effect can only be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the reasons for its imposition." *Id.* To this second category, "courts apply the 'rule of reason' under which the fact-finder weighs all the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Id.* (citing *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)).

### (1) Robin Morton's Affidavit

Appellant Robin C. Morton was the former president and mortgage broker of Excellence. In her affidavit, she stated the following. As Excellence's president, she oversaw all facets of

Excellence's operations for approximately nine years. She was responsible to ensure "that all loans were property and legally handled as per state and federal regulations." A loan customer may ask the originating mortgage company to transfer their loan file to another mortgage company, and the transferring company is legally obligated to transfer the file. Until the transferring company receives the customer's signed request, it may not "share, release or disclose the information contained in a loan file in any way with the transferee mortgage company." Georgetown acquired the pipeline loan customer files from Excellence "without any type of transfer letter." When Excellence turned over the pipeline loan customer files to Georgetown, "Georgetown immediately filed an assumed name certificate and continued to do business under the name of Excellence Mortgage so as to represent to pipeline customers that their mortgage company had not changed." The pipeline loan customers, and others, "were intentionally misled to believe that they were still working with the same originating mortgage company, Excellence Mortgage, [Ltd.]" Excellence "falsely claimed [it] had the sole right to serve the pipeline customers," and it unlawfully compelled Premier to not accept any loan transfers for pipeline customers. By its actions to prevent Appellants from competing with Georgetown for the pipeline loan customers, Excellence had an adverse effect on the construction-to-permanent loan market in the greater San Antonio area.

(2)     John H.P. Hudson's Affidavit

In John Hudson's affidavit, he stated the following. He is the Area Manager with Premier Nationwide Lending, and he has over ten years' experience in the mortgage business. A prospective borrower is not obligated to remain with the original mortgage company. The customer may transfer their file at any time, but the transferring mortgage company may not transfer the file without the prospective borrower's written request.

(3) Stefen D. Brooks's Affidavit

In Stefen D. Brooks's affidavit, he stated the following. Georgetown transferred all the pipeline loan customer files from Excellence "to its own computer system without obtaining a file transfer request from any of the loan customers." Excellence and Georgetown's attorneys sent letters to Appellants "telling us we could not serve [the pipeline] customers" to prevent Appellants from servicing the loans.

(4) Kevin Sullivan's Affidavit, Deposition

Excellence moved for summary judgment against Appellants' antitrust claims on the basis that, as a matter of law, the employee nondisclosure and confidentiality provisions in Appellants' employment and confidentiality agreements were not non-compete covenants and could not unlawfully restrain trade. In Kevin Sullivan's deposition and affidavit, he stated that Appellants had violated the nondisclosure and confidentiality provisions by taking and using Excellence's confidential information to solicit pipeline customers. Excellence provided copies of an Employment Agreement and Confidentiality Agreement, and Sullivan stated each Appellant signed these documents.

(5) Excellence Failed to Meet Its Burden

Considering all the summary judgment evidence, *see Mann Frankfort*, 289 S.W.3d at 848, and taking Appellants' evidence as true, *see Nixon*, 690 S.W.2dd at 548–49, it shows at a minimum that Excellence transferred files to Georgetown without first obtaining the pipeline loan customers' written requests, such transfers are prohibited under state or federal regulations, Georgetown and Excellence worked together to effect the transfers, and Excellence sought to prevent Appellants from competing for the pipeline loan customers. Thus, the summary judgment evidence raises a genuine issue of material fact on whether the complained of actions amount to an unreasonable practice. *See Marlin*, 307 S.W.3d at 427. Although Excellence argued and proffered summary

judgment evidence that it was merely protecting its confidential information under valid nondisclosure and confidentiality agreements, we conclude Excellence failed to conclusively disprove the essential element of unreasonable practice. *See id.*

      b.      <u>Adverse Effect on Competition in the Market</u>

"To establish a violation under the rule of reason, a plaintiff must prove the restrictive practice has an adverse effect on competition in the relevant market." *Id.* at 429. The plaintiff must "prove what market it contends was restrained," prove "that the defendants played a significant role in the relevant market," and proffer "evidence of 'demonstrable economic effect.'" *Id.*

      (1)      Market Restrained, Defendant's Role

In Morton's affidavit, she identified the restrained market as the construction-to-permanent loan market in the greater San Antonio area, and she stated Excellence had about fifty percent of that market. In Hudson's affidavit, he similarly described Excellence's niche market as arranging interim and permanent financing for new home builders. He stated that Excellence had a "substantial share" of this niche market in the Bexar County area.

      (2)      Evidence of Demonstrable Economic Effect

Morton and Hudson stated that Excellence's actions had an adverse effect on Excellence's portion of the residential mortgage market in the San Antonio area. Both affiants had many years' experience as senior officers for mortgage companies operating in the greater San Antonio area. Morton identified "loan products offerings, interest rate options, [and] closing cost packages" as items affected by competition. Accepting Appellants' evidence as true, we may also reasonably infer that Excellence's actions to prevent competition for pipeline loan customers in the greater San Antonio area would result in a demonstrable economic effect. Although "an inference of *possible* effect" is not enough to establish a violation, *Coca-Cola Co.*, 218 S.W.3d at 689, a

reasonable inference of demonstrable economic effect is sufficient to raise a fact issue, *see Humphrey v. Balli*, 61 S.W.3d 519, 523 (Tex. App.—San Antonio 2001, no pet.).

### c. Fact Issue Raised

Excellence argued and proffered evidence to attempt to conclusively disprove any unreasonable practice on its part. *See Elliott-Williams*, 9 S.W.3d at 803 (conclusively disprove element); *see Marlin*, 307 S.W.3d at 429 (antitrust elements). However, taking Appellants' evidence as true and making reasonable inferences in their favor, we conclude Appellants met their burden to raise a genuine issue of material fact on each element of their antitrust claims. *See Nixon*, 690 S.W.2d at 548–49. Thus, Excellence was not entitled to summary judgment on Appellants' antitrust claims. *See Elliott-Williams*, 9 S.W.3d at 803; *Nixon*, 690 S.W.2d at 548–49.

### F. Appellants' Claims of Interference with Prospective Business Relations

Appellants sued Excellence and the Grothues defendants for tortious or unlawful interference with prospective business relations. Appellants claimed Excellence intentionally interfered with Appellants' attempts to compete for the pipeline loan customers and Excellence's actions caused Appellants to lose the commissions on the pipeline loans. The trial court granted Excellence's motion against Appellants' interference claims.

#### *1. Summary Judgment Burdens*

To prevail on summary judgment, Excellence had to conclusively disprove at least one essential element of Appellants' interference claims. *See Elliott-Williams*, 9 S.W.3d at 803; *see also G & H Towing Co.*, 347 S.W.3d at 297. We consider the elements of an interference with prospective business relations claim.

#### *2. Interference with Prospective Business Relations*

A tortious or unlawful interference with prospective business relations claim has multiple elements. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)

(listing five elements); *Plotkin v. Joekel*, 304 S.W.3d 455, 487 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same). One of the essential elements is that "the defendant's conduct was independently tortious or unlawful." *Coinmach Corp.*, 417 S.W.3d at 923; *accord Plotkin*, 304 S.W.3d at 487.

Here, Excellence moved for summary judgment only on the ground that its conduct was not independently tortious or unlawful. *See Coinmach Corp.*, 417 S.W.3d at 923. As we have previously concluded, Appellants raised a genuine issue of material fact on whether Excellence committed an antitrust violation—an unlawful act. Thus, Excellence did not meet its burden to conclusively disprove the only essential element on which it moved for summary judgment, and summary judgment on Appellants' interference claims was not proper. *See Elliott-Williams*, 9 S.W.3d at 803.

## CONCLUSION

Applying the applicable standard of review, we conclude the Brooks Appellants' employment relationships were involuntarily terminated by Excellence for its convenience and Barton's employment relationship was terminated by Excellence. Having construed the Plan as a matter of law, we conclude Appellants were entitled to commissions only on loans that closed and funded on or before their effective dates of termination. Because none were terminated after October 1, 2010, we conclude the trial court properly granted summary judgment for Excellence on Appellants' breach of contract claims for loans closed and funded after October 1, 2010.

However, Excellence failed to meet its burden to conclusively disprove any essential element of Appellants' antitrust claims. Taking Appellants' affidavits as true, and making every reasonable inference in their favor, we conclude genuine issues of material fact were raised in Appellants' antitrust claims.

Because Appellants raised a genuine issue of material fact on whether Excellence committed an antitrust violation—an unlawful act—and Excellence moved for summary judgment only on that element, Excellence was not entitled to summary judgment on Appellants' interference claims.

We affirm the portion of the trial court's judgment against Appellants on their breach of contract claims. We reverse the portion of the judgment on Appellants' antitrust and interference with prospective business relations claims, and we remand this cause to the trial court.

Patricia O. Alvarez, Justice

# APPENDIX 2

Filed
12 July 9 P4:24
Donna Kay McKinney
District Clerk
Bexar District
Accepted by:
Cecilia Barbosa

NO. 2010-CI-16915

| | | |
|---|---|---|
| EXCELLENCE MORTGAGE, LTD. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| V. | § | BEXAR COUNTY, TEXAS |
| | § | |
| NTFN, INC. D/B/A PREMIER | § | |
| NATIONWIDE LENDING, ROBIN C. | § | |
| MORTON, BARRY BROOKS, HESTON | § | |
| C. KING, STEFEN DOUGLAS BROOKS, | § | |
| JANUARY MAY GOETTE, JOHANNA | § | |
| BARTON, JESSE RODRIGUEZ | § | |
| BENAVIDES, AND SANTEX, LTD. | § | 225TH JUDICIAL DISTRICT |

### EXCELLENCE MORTGAGE, LTD.'S SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW Plaintiff, EXCELLENCE MORTGAGE, LTD. ("Excellence"), and files this Second Amended Petition, and for cause would respectfully show as follows:

### I. Parties

Plaintiff, Excellence Mortgage, Ltd., is a limited liability partnership located at 3512 Paesanos Parkway, Suite 100, San Antonio, Bexar County, Texas 78231.

Defendant, Robin C. Morton, is an individual who has appeared in this case and no further service of process is necessary.

Defendant, Barry Brooks, is an individual who has appeared in this case and no further service of process is necessary.

Defendant, Heston C. King, is an individual who has appeared in this case and no further service of process is necessary.

Defendant, Stefen Douglas Brooks, is an individual who has appeared in this case and no further service of process is necessary.

516734.1
242

Defendant, January May Goette, is an individual who has appeared in this case and no further service of process is necessary.

Defendant, Johanna Barton, is an individual who has appeared in this case and no further service of process is necessary.

Defendant, Jesse Rodriguez Benavides, is an individual who has appeared in this case and no further service of process is necessary.

## II. Jurisdiction

This Court has jurisdiction over this controversy under article 5, section 8, of the Texas Constitution and Texas Government Code § 24.007. The amount in controversy is within the jurisdictional limits of this Court.

## III. Venue

Venue is proper in Bexar County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), as all or a substantial part of the events or omissions giving rise to this claim occurred in Bexar County.

## IV. Factual Background

Excellence is a mortgage broker. Robin C. Morton, Barry Brooks, Heston C. King, Stefen Douglas Brooks, January May Goette, Johanna Barton, and Jesse Rodriguez Benavides are all former employees of Excellence. Morton was the President of Excellence until her termination on September 24, 2010. On October 1, 2010, Barry Brooks, Heston C. King, Stefen Douglas Brooks, January May Goette, Johanna Barton, and Jesse Rodriguez Benavides, all of whom were employed as loan officers, resigned their employment with Excellence.

Each of the loan officer defendants, like all Excellence employees, signed an Employment Agreement and an Employee Confidentiality Agreement during their

2

516734.1
243

employment with Excellence. The Employment Agreement contains the following relevant provisions:

4.     <u>Confidential Information.</u>

(a)     <u>Provision of Confidential information.</u> On the effective date of this Agreement and throughout Employee's employment with the Company, the Company shall, in order for the Employee to properly and effectively perform his or her job, provide the Employee with confidential business information. The Company promises to continue to provide Employee with such confidential information during the course of the Employee's employment with the Company.

(b)     <u>Employee to Maintain Confidentiality.</u> The Employee acknowledges that he/she occupies a position of trust and confidence in the Company, and the Employee agrees that he/she will not, without the prior written consent of the Company, disclose or make known to any person or use for his/her own benefit or gain any confidential information of the Company. Confidential information means any information not generally disclosed or known to the trade or public concerning the Company, its business, and its customers. For purposes of this Agreement, confidential information shall include, but is not limited to, the following: (1) all information (whether maintained in the Company's computer databases, printed reports, paper files, notes, correspondence, rolodexes however kept, personal computers, PDA's, or any place else) relating to the Company's customer's [sic], including the identity of the Company's customers, customer personal data information, customer contact information, customer account information and balances, and customer investment preferences; (2) all information relating to the Company's business and marketing plans; and (3) any other information that the Company designates as confidential.

The Employee Confidentiality Agreement provides:

All information provided to Excellence Mortgage, Ltd. regarding borrower/co-borrower income, assets, and all other information pertinent to their loan transaction is private and sensitive in nature and considered confidential. Confidential information should not be discussed by any employee unless it is pertains to his or her specific job requirements.

...

3

I hereby acknowledge, by my signature below, that I understand the terms for confidentiality at Excellence Mortgage, Ltd. which I have knowledge of and access in the course of my employment with Excellence Mortgage, Ltd. is to be kept confidential, and this confidentiality is a condition of my employment. This information shall not be disclosed to anyone under any circumstances, except to the extent necessary to fulfill my job requirements. I understand that my duty to maintain confidentiality continues even after I am no longer employed.
...

Excellence Mortgage considers information concerning its customers to be confidential, proprietary and trade secret. Excellence requires its employees to acknowledge that they will not keep or disclose any confidential information (including information regarding its customers) during or after their employment with Excellence.

Shortly after the loan officer defendants left Excellence, Excellence began receiving letters from some of its customers requesting that their files be transferred from Excellence. Some or all of the defendants were soliciting Excellence's customers. Such conduct is a violation of the loan officer defendant's agreements with Excellence and constitutes misappropriation of trade secrets, breach of fiduciary duty, and tortious interference with contractual relations.

While employed at Excellence, the loan officers were compensated on commission. They also received draws from Excellence. The draws were paid as an advance to the loan officers. The loan officers were required to repay the draws. At the time they quit, several of the loan officers had draws they had not paid back. As a result, these loan officer owe money to Excellence.

NTFN, Inc. d/b/a Premier Nationwide Lending (Premier) entered a settlement agreement of the claims against it in this lawsuit. Defendants Stefen Brooks, Barry Brooks, Johanna Barton, and Heston King are employees, agents and/or representatives of Premier. As part of its settlement, Premier released all claims against Excellence. The

516734.1

245

4

cited Defendants are subject to the settlement agreement and are in violation of the settlement agreement.

After the defendants left Excellence, Excellence discovered that each defendant had charged money on Visa cards. The credit card debts were paid with Excellence funds. The charges made were not authorized by Excellence.

## V. Causes of Action

### 1. Breach of Fiduciary Duty

Each of the defendants owed fiduciary duties to Excellence. By improperly using the credit cards and improperly using Excellence funds to pay the cards, the defendants breached their fiduciary duties. By soliciting Excellence's customers and/or disclosing information about Excellence's customers to third parties, defendants breached their fiduciary duties. As a result of those breaches, customers of Excellence Mortgage have transferred their business to third parties, causing financial injury to Excellence and/or financial benefit to the defendants. As a result of those breaches, Excellence has suffered financial injuries.

### 2. Breach of Contract

#### a. Confidential information

Each of the defendants had agreements with Excellence obligating them to maintain the confidentiality of Excellence's information, including information regarding Excellence's customers. Excellence performed all of its required contractual duties. The loan officer defendants breached their contracts by disclosing customer information to third parties and/or by soliciting and/or effectuating file transfers from Excellence to third parties. As a result, Excellence has suffered damage.

#### b. Money owed to Excellence

5

516734.1
246

Excellence paid the loan officers non-forgivable draws. At the time they quit, the following loan officers owed the following amounts:

Barry Brooks:       $ 7,337.70

Heston King:        $ 17,485.77

Neither defendant has paid the money back. Defendants are in breach of contract.

### c.     Settlement Agreement

In the settlement agreement between Excellence and Premier, Premier is defined as:

> 11.2     "PREMIER" and/or "DEFENDANT" (whether singular or plural) shall mean the following persons and entities: NTFN, Inc. d/b/a Premier Nationwide Lending and its parents, affiliated and related companies, and each of their shareholders, officers, directors, agents, partners, employees, representatives, affiliates, indemnities, successors and assigns, successors-in-interest and predecessors-in-interest.

The release by Premier is:

### 2.2     Premier Releases and Discharge

For and in consideration of Actions taken by Excellence (as provided in Section 4.1 below), and for other good and valuable consideration, the sufficiency of which is hereby acknowledged and confessed, Defendant hereby agrees and binds itself as follows:

Defendant for itself, its agents, representatives, successors, assigns, and any persons or entities claiming by, through or for it, have ACQUITTED, RELEASED and FOREVER DISCHARGED and by these presents does for itself, and for and on behalf of its successors and assigns, hereby ACQUIT, RELEASE and FOREVER DISCHARGE the Plaintiff of and from any and all claims, remedies, demands, debts, liens, causes of action, or liabilities, at law or in equity, either in contract or in tort, under common law or statute, as well as any other character or kind of action now held or owned by Defendant in whole or in part, which Defendant may now have or may hereafter claim to hold or possess on account of, growing out of, related to or concerning, whether directly or indirectly, proximately or remotely, arising from or related to in any manner any and all of the following:

a.     Any and all claims for damages or expenses incurred by Defendant, including claims attorney's fees; reasonable and necessary expenses

6

516734.1

247

incurred in connection with the Incident; and any other damages of any nature whatsoever allegedly sustained by Defendant that have been or that could have been asserted against the Plaintiff and which may relate, directly or indirectly, to any claims brought in the Lawsuit;

b.  Any and all claims, allegations, causes of action, rights, remedies and damages, if any, that have been made or that could have been made a part of the Lawsuit;

c.  Any and all claims, known or unknown, that arise in whole or in part, out of the Incidents made the basis of this lawsuit; and

d.  Any and all claims, rights, privileges, remedies, lawsuits and causes of action relating to any matter dealt with in this Agreement and in the Lawsuit.

2.3.  It is understood and agreed that these are FULL, FINAL and COMPLETE RELEASES and include all claims of any kind or character. It is the intention of the parties to this Agreement that this Agreement shall be as general as possible, and that it shall cover every conceivable contingency which might arise in the future, or which may have arisen in the past, whether known or unknown at this time.

2.4.  It is understood, acknowledged, and agreed by Parties that the actions taken by the Parties, as set out below, are done as a FULL, FINAL and COMPLETE RELEASE and SATISFACTION of all claims that either party may now have or may at any time hereafter assert against the other Party by reason of the matters mentioned in this Agreement or in the Lawsuit.

2.4.  It is also understood and agreed that this each Party FULLY, FINALLY and COMPLETELY RELEASES and DISCHARGES the other Party from any matter or thing dealt with herein, and that same may be pleaded as a complete and absolute bar to any and all suit or suits pending, or which may hereafter be pending, filed, or prosecuted by either of the Parties, or anyone claiming by, through, or for any of the Parties, against the other Party relating to the matters dealt with in this Agreement.

Additionally, Premier agreed to:

a.  Premier agrees not to solicit any customer of Excellence Mortgage for one year from the date of this agreement (as reflected by the latest date on the signature page). Customer means those persons identified in Exhibit "B."

7

516734.1

248

b.    For any customers as defined herein who were previously contacted about transferring their loan files to Premier, Premier will send a letter in the form of Exhibit "C" to those persons

In their counterclaims, Counter-Plaintiffs bring claims for breach of contract, quantum meruit, unlawful restraint of trade and interference with prospective business relations. All of these claims have been released by Settlement Agreement. Counter-Plaintiffs are estopped from asserting these claims and their pursual of them constitutes breach of contract. As a result of Counter-Plaintiffs' conduct, Excellence has suffered damages, including attorneys' fees.

### 3. Tortious Interference

Excellence had valid contracts and/or there was a reasonable probability they would enter into business relationships with third parties. Those third parties were customers of Excellence. The defendants willfully and intentionally interfered with those contracts and/or potential relationships by soliciting and/or effectuating transfer of files from Excellence to a third party. As a result, Excellence has suffered damage.

### 4. Misappropriation of Trade Secrets

Information concerning the customers of Excellence Mortgage is confidential, proprietary and trade secret. By soliciting or in any manner effectuating a transfer of business from Excellence to any third party, the defendants used or disclosed those trade secrets in violation of confidential and/or contractual relationship with Excellence. Defendants have misappropriated Excellence's trade secrets. As a result, Excellence has suffered damage.

8

516734.1

249

### 5.  Fraud

All Defendants made unauthorized charges on credit cards. These unauthorized charges were not disclosed to Excellence. The use and charging to Excellence of credit cards were material facts. Defendants know that plaintiff was not aware of the unauthorized credit card use, but never disclosed such. Had Plaintiff known of the use, Plaintiff would have stopped it. As a result of the failure to disclose unauthorized credit card use, Excellence has suffered damage.

### 6.  Texas Theft Liability Act

Defendants' conduct in misappropriating trade secrets and in using the credit cards without authorization are proscribed actions under § 134.002(2) of the Texas Theft Liability Act. Specifically, Defendants have unlawfully and maliciously misappropriated Excellence funds and trade secrets. Accordingly, Defendants are liable to Excellence for its actual damages and up to $1,000 additional damages. In addition, Plaintiff is entitled to recover from Defendants court costs and attorneys' fees.

### VIII. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for judgment of and recover from defendants as follows:

1.  for actual damages in such an amount as the evidence may show and the jury may determine to be proper;

2.  for exemplary damages in such an amount as the evidence may show and the jury may determine to be proper;

3.  reasonable and necessary attorneys' fees for trial and any appeals of this suit, along with expert witness fees and other costs of discovery;

4.  prejudgment and post-judgment interest;

9

516734.1

250

5.   taxable court costs;

6.   statutory damages;

7.   For such other relief, general or special, at law or in equity, to which Plaintiff is justly and equitably entitled.

Respectfully submitted,

WILLIAM H. FORD
State Bar No. 07246700
Direct Line: (210) 731-6306
GREGORY A. SCRIVENER
State Bar No. 24013480
Direct Line: (210) 731-6342
THE FORD FIRM, P.C.
10001 Reunion Place, Suite 640
San Antonio, Texas 78216
(210) 731-6400 Main
(210) 731-6401 Facsimile

ATTORNEYS FOR PLAINTIFF
EXCELLENCE MORTGAGE, LTD.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served in accordance with Texas Rules of Civil Procedure on the 9th day of July, 2012, to the following:

Mr. Darby Riley
Riley & Riley
Attorneys at Law
320 Lexington Avenue
San Antonio, Texas 78215

WILLIAM H. FORD
GREGORY A. SCRIVENER

516734.1

251

10

# APPENDIX 3

the handwritten figures. See Uniform Commercial Code § 3–118(b), (c).

## REPORTER'S NOTE

This Section is based on former § 236, but former Subsections (a) and (b) are transferred to § 202 and former Subsections (d) and (f) to §§ 206 and 207. The other Subsections are rearranged. Subsection (b) is new; it conforms to Uniform Commercial Code §§ 1–205, 2–208. See 4 Williston, Contracts §§ 615–26 (3d ed. 1961); 3 Corbin, Contracts §§ 546–52, 559 (1960 & Supp. 1980); Patterson, The Interpretation and Construction of Contracts, 64 Colum. L. Rev. 833 (1964).

*Comment b.* See Intertherm, Inc. v. Coronet Imperial Corp., 558 S.W.2d 344, 351–52 (Mo. Ct. App. 1977).

*Comment c.* Many courts have said that the construction process should seek a reading that leads to a reasonable result. See, e.g., Crestview Bowl, Inc. v. Womer Constr. Co., 225 Kan. 335, 592 P.2d 74 (1979); Goddard v. South Bay Union High School Dist., 79 Cal. App.3d 98, 144 Cal. Rptr. 701 (1978); Intertherm, Inc. v. Coronet Imperial Corp., supra. Nonetheless, the real question is one of the intentions of the parties. See Perry and Wallis, Inc. v. United States, 192 Ct. Cl. 310, 427 F.2d 722 (1970); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3d Cir. 1969); compare the majority and dissenting opinions in Pokorny v. Pecsok, 50 Ohio St.2d 260, 364 N.E.2d 241 (1977) (dissent citing this Section in Tentative Draft). Illustration 1 is based on Illustration 1 to former § 236.

*Comment d.* For an example of express terms prevailing over custom of the trade, see Citizens Nat'l Bank v. L. L. Glascock, Inc., 243 So.2d 67 (Miss. 1971).

*Comment e.* On the general standard and that specific clauses should prevail over general ones, see Western Oil Fields, Inc. v. Pennzoil United, Inc., 421 F.2d 387 (5th Cir. 1970). That this standard must yield when inappropriate under the particular circumstances, see Elliott Leases Cars, Inc. v. Quigley, 118 R.I. 321, 373 A.2d 810 (1977); contrast the reading of the dissenting opinion in that case, which cites § 202 and this Section in Tentative Draft.

*Comment f.* See Roylex, Inc. v. Avco Commun. Devs., Inc., 559 S.W.2d 833 (Tex. Civ. App. 1977), which finds the general rule that handwriting prevails over typewriting inapplicable under the circumstances shown by testimony. Illustrations 2 and 3 were Illustrations 4 and 5 to former § 236. Illustration 4 is based on United States Fidelity & Guar. Co. v. First Nat'l Bank, 244 S.C. 436, 137 S.E.2d 582 (1964).

## § 204. Supplying an Omitted Essential Term

When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights

---

and duties, a term which is reasonable in the circumstances is supplied by the court.

Comment:

*a. Scope; relation to other rules.* This Section states a principle governing the legal effect of a binding agreement. The supplying of an omitted term is not technically interpretation, but the two are closely related; courts often speak of an "implied" term. In many common situations the principle has been elaborated in more detailed rules, applicable unless otherwise agreed. See the rules on the effect of failure of performance stated in §§ 231–49 and the rules on impossibility and frustration stated in Chapter 11, and compare §§ 158 and 272, regarding the supplying of terms in cases of mistake and impracticability or frustration. A similar principle is often applicable in determining whether the terms of an agreement are sufficiently certain to constitute a contract. See §§ 33, 34. In both situations the supplying of an omitted term may resemble or overlap interpretation (see § 200) or the effect given to usage (see §§ 219–23).

*b. How omission occurs.* The parties to an agreement may entirely fail to foresee the situation which later arises and gives rise to a dispute; they then have no expectations with respect to that situation, and a search for their meaning with respect to that situation is fruitless. Or they may have expectations but fail to manifest them, either because the expectation rests on an assumption which is unconscious or only partly conscious, or because the situation seems to be unimportant or unlikely, or because discussion of it might be unpleasant or might produce delay or impasse.

*c. Interpretation and omission.* Interpretation may be necessary to determine that the parties have not agreed with respect to a particular term, but the supplying of an omitted term is not within the definition of interpretation in § 200. Where there is tacit agreement or a common tacit assumption or where a term can be supplied by logical deduction from agreed terms and the circumstances, interpretation may be enough. But interpretation may result in the conclusion that there was in fact no agreement on a particular point, and that conclusion should be accepted even though the omitted term could be supplied by giving agreed language a meaning different from the meaning or meanings given it by the parties.

*d. Supplying a term.* The process of supplying an omitted term has sometimes been disguised as a literal or a purposive reading of contract language directed to a situation other than the situation that arises. Sometimes it is said that the search is for the term the parties

would have agreed to if the question had been brought to their attention. Both the meaning of the words used and the probability that a particular term would have been used if the question had been raised may be factors in determining what term is reasonable in the circumstances. But where there is in fact no agreement, the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process. Thus where a contract calls for a single performance such as the rendering of a service or the delivery of goods, the parties are most unlikely to agree explicitly that performance will be rendered within a "reasonable time;" but if no time is specified, a term calling for performance within a reasonable time is supplied. See Uniform Commercial Code §§ 1–204, 2–309(1). Similarly, where there is a contract for the sale of goods but nothing is said as to price the price is a reasonable price at the time for delivery. See Uniform Commercial Code § 2–305.

e. *Effect of the parol evidence rule.* The fact that an essential term is omitted may indicate that the agreement is not integrated or that there is partial rather than complete integration. In such cases the omitted term may be supplied by prior negotiations or a prior agreement. See § 216. But omission of a term does not show conclusively that integration was not complete and a completely integrated agreement, if binding, discharges prior agreements within its scope. See § 213. Where there is complete integration and interpretation of the writing discloses a failure to agree on an essential term, evidence of prior negotiations or agreements is not admissible to supply the omitted term, but such evidence may be admissible, if relevant, on the question of what is reasonable in the circumstances.

**Illustration:**

1. A and his wife convey their ranch to A's sister and her husband, reserving an option to repurchase. The parties agree orally that the property will be kept in the family, but the deed says nothing as to assignment of the option. If the deed is found to be a partial integration, the oral agreement is effective to show that the option is not assignable. If the deed is found to be a complete integration, the oral agreement is discharged and the option is assignable.

**REPORTER'S NOTE**

This Section is new. See 3 Corbin, Contracts §§ 561–72A (1960 & Supp. 1980); 4 Williston, Contracts §§ 600–610B, 614–15, 640 (3d ed. 1961); Farnsworth, Disputes Over Omissions in Contracts, 68 Colum. L. Rev. 860 (1968).

*Comment a.* For a discussion of the duty of good faith and fair dealing, see § 205. For its relation to the court's power to supply omitted terms, and application of these concepts to different parts of a contract with differing results, see Snyder v. Howard Johnson's Motor Lodges, Inc., 412 F. Supp. 724 (S.D. Ill. 1976). In Chemetron Corp. v. McLouth Steel Corp., 522 F.2d 469 (7th Cir. 1975), the court, from the ungrammatical language of a provision, concluded that the draftsman had inadvertently omitted either "and" or "or." Compare § 158.

*Comment d.* Examples of courts adding a reasonable time requirement to contracts silent on the point include Haines v. City of New York, 41 N.Y.2d 769, 396 N.Y.S.2d 155, 364 N.E.2d 820 (1977) (long-term maintenance of a sewer system; cites this Section in Tentative Draft); and Houston County v. Leo L. Landauer & Assoc., 424 S.W.2d 458 (Tex. Civ. App. 1968), ref. n.r.e. (time for performance under a contract). In Southern Bell Tel. & Tel. Co. v. Florida E. Coast Ry. Co., 399 F.2d 854 (5th Cir. 1968), 47 N.C. L. Rev. 710

(1969), a power to place telephone and telegraph lines over and under railroad tracks, duration of which was unspecified, was held subject to termination upon reasonable notice. The power had already been in existence for more than fifty years. As to a court's power to find an omitted term limiting restrictive employment agreements to a reasonable time or area, compare Toch v. Eric Schuster Corp., 490 S.W.2d 618 (Tex. Civ. App. 1972), ref. n.r.e., with Haines v. City of New York, supra (dictum). In Snyder v. Howard Johnson's Motor Lodges, Inc., supra, the court refused to find an implied covenant not to compete, but found an implied covenant that a restaurant would be operated in a manner consistent with others operated by the defendants. For an example of a court refusing to supply an allegedly omitted term, see Hinckley v. Bechtel Corp., 41 Cal. App.3d 206, 116 Cal. Rptr. 33 (1974).

*Comment e.* On the interplay with the parol evidence rule see Snyder v. Howard Johnson's Motor Lodges, Inc., supra. Illustration 1 is based on Masterson v. Sine, 68 Cal.2d 222, 65 Cal. Rptr. 545, 436 P.2d 561 (1968).

## TOPIC 2. CONSIDERATIONS OF FAIRNESS AND THE PUBLIC INTEREST

### § 205. Duty of Good Faith and Fair Dealing

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

**Comment:**

a. *Meanings of "good faith."* Good faith is defined in Uniform Commercial Code § 1–201(19) as "honesty in fact in the conduct or transaction concerned." "In the case of a merchant" Uniform Com-